UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-mj-8234-RMM

UNITED STATES OF AMERICA,

                           Plaintiff,

vs.

STEVE TELUSME,

                           Defendant.
_____/

FILED BY SP D.C.
May 24, 2024
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Miami Office of the United States Attorney's Office prior to July 20, 2008?

    Yes      X **No**

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office (West Palm Beach Office) only prior to December 18, 2011?

    Yes      X **No**

3. Did this matter originate from a matter pending in the Fort Pierce Office of the United States Attorney's Office prior to August 8, 2014?

    Yes      X **No**

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

BY: /s/ John C. McMillan
JOHN C. McMILLAN
ASSISTANT UNITED STATES ATTORNEY
Admin. No. A5500228
500 S. Australian Ave., Suite 400
West Palm Beach, FL 33401
Office: (561) 820-8711
John.mcmillan@usdoj.gov

AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
|---|---|
| v. | ) |
|  | ) Case No. 24-mj-8234-RMM |
| STEVE TELUSME, | ) |
|  | ) |
|  | ) |
| *Defendant(s)* | |

FILED BY ___SP___ D.C.
May 24, 2024
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  04/29/2024 - 06/21/2024  in the county of  Palm Beach  in the
Southern District of Florida, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(g)(1), 924(e) | Felon in Possession of Firearms and Ammunition (Armed Career Criminal) |
| 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) | Possession with Intent to Controlled Substances (Cocaine and Fentanyl); and |
| 18 U.S.C. § 924(c)(1)(A) | Possession of one or more firearms in furtherance of a federal drug trafficking crime |

This criminal complaint is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Kevin Drummond, Task Force Officer, ATF
*Printed name and title*

Subscribed and sworn to before me in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone (Facetime).

Date: 5/24/24

_____
*Judge's signature*

City and state:    West Palm Beach, Florida         Hon. Ryon M. McCabe, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF
A CRIMINAL COMPLAINT
Case No. 24-mj-8234-RMM**

I, Kevin W. Drummond, being first duly sworn, does hereby depose and state as follows:

**INTRODUCTION**

1. Your affiant, Kevin W. Drummond, is a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and has served in that capacity since November 2017. Your affiant is also a duly sworn Deputy Sheriff in and for Palm Beach County, Florida. In total, your affiant has approximately 20 years of law enforcement experience. As a Task Force Officer with ATF, your affiant's duties and responsibilities include conducting criminal investigations of individuals that have violated federal laws, particularly laws contained in Titles 18 and 21 of the United States Code. During your affiant's tenure with ATF and PBSO, your affiant has participated in excess of over three hundred (300) investigations related to the illegal sale, purchase, use, possession and distribution of illicit narcotics to include marijuana, cocaine, heroin, ecstasy and fentanyl. As a consequence, your affiant has become extremely familiar with the ways, manner, and means by which illegal drugs are purchased and sold within the Palm Beach County area of the Southern District of Florida, and the terminology, coded expressions, and street terminology used and employed by persons engaged in those criminal activities.

2. Your affiant submits this affidavit in support of a criminal complaint charging **Steve TELUSME,** with: (a) two (2) counts of Felon in Possession of a Firearm and Ammunition, in violation of Title 18, United States Code, Sections 924(g)(1) and 924(e)(Armed Career Criminal); (b) Possession With Intent to Distribute Controlled Substances (Cocaine and Fentanyl),

in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(C); and Possession of one or more Firearms in Furtherance of a Drug Trafficking Offense, in violation of Title 18, United States Code, Section 924(c)(1)(A), within Palm Beach County and the Southern District of Florida.

3. The facts contained in this Affidavit are based on information elicited in the course of my own investigation, as well as upon information and evidence relayed to me by other law enforcement officers with personal knowledge of the events described herein. Because this affidavit is submitted for the limited purpose of obtaining a criminal complaint, it does not purport to contain all the facts known to me about the investigation, but rather, those facts that I submit establish probable cause of the offenses listed herein.

## PROBABLE CAUSE

4. On April 29, 2023, Palm Beach County Sheriff's Office (PBSO) Gang detectives with the assistance of a PBSO Special Weapons and Tactics (SWAT) team arranged to conduct an undercover (UC) buy of an AK variant rifle from convicted felon "SA." At approximately 12:00 pm detectives and SWAT members met at a pre-determined location to brief about the UC buy. The deal was set to occur in the Dominoes' Pizza parking lot located at 2800 N Military Trail West Palm Beach, Florida. The UC made contact with SA and SA advised on meeting at this location to conduct the deal. The deal was to purchase an AK variant rifle from SA for $1,000.00.

5. After the briefing, the SWAT team members responded to the parking lot of the Dominoes' Pizza to get set up for security. Once the SWAT members were in place they advised they were set and the UC could begin responding to the location. The UC responded to the location and initially parked on the northwest side of the parking lot. However, upon arrival at the prearranged location of the parking lot, the UC received a phone call from an individual later

identified as the defendant Steve TELUSME utilizing the phone number 561-800-8512 TELUSME informed the UC that he is SA's homeboy and SA told him to call the UC because the UC was supposed to come and get something. These calls were audio recorded. The UC parked and got out of his vehicle. While the UC was out of his vehicle, TELUSME approached and spoke to the UC. TELUSME was wearing a multi-colored shirt and black pants with black and white Nike sneakers.

6.  Upon the UC making contact with TELUSME, TELUSME told the UC to move to the back of the plaza. The UC advised he was not going to the back of the plaza but would move further south into the parking lot. TELUSME told the UC he did not like the one truck that was parked in the area. It appeared TELUSME felt this truck may be law enforcement and did not want to do the deal where the individuals in this truck could see. TELUSME then began walking to the south of the parking lot. The UC moved his vehicle to the center part of the parking lot. All of the movements were captured on video by the PBSO Aviation Unit.

7.  Once the UC moved his vehicle, TELUSME walked around the south side of the building out of view of the UC. However, the Aviation Unit was able to maintain visual observation of TELUSME. TELUSME walked to the east into the complex of Westchester. TELUSME then walked north through the complex and stopped at a black Chrysler 300. TELUSME opened the trunk of the Chrysler 300 and then closed it. TELUSME eventually walked to the address of 4387 Woodstock Drive, Unit C, and entered through the fenced area and then entered the front door of that residence. TELUSME shortly after exited this location and walked back to the Chrysler 300 and got into the driver seat, then being the sole observed occupant of the vehicle. TELUSME began to drive away in the vehicle and eventually backed up in the grass right next to the residence he had previously entered, the 4387 Woodstock Drive, Unit C. TELUSME

exited the vehicle and walked back inside of the fenced area. Very shortly after, TELUSME exited the fenced area carrying what appeared to be a rifle wrapped up in some type of clothing and another item that appeared to be a bag of some sort light in color. TELUSME placed both items into the front of the Chrysler 300 and then drove away heading back towards the parking lot where the UC was parked.

8.  TELUSME pulled back into the parking lot and parked next to the UC's vehicle. In an audio and video-recorded transaction, the UC was out of his vehicle and immediately made contact with TELUSME at TELUSME's driver's side window, while TELUSME remained within his vehicle. After engaging in a brief conversation with TELUSME, the UC walked around to the passenger side of the Chrysler 300 and removed a jacket and pillow case, which contained the firearm and magazines for the firearm, respectively, from within TELUSME's vehicle. The UC provided the cash to TELUSME and TELUSME and the UC left the area.  It should be noted upon running TELUSME through the PBSO PALMS database, TELUSME has a recent address of 4387 Woodstock Drive, Unit C, West Palm Beach, Palm Beach County, Southern District of Florida.

9.  The UC responded to a pre-determined location and provided all of the items purchased from TELUSME to your affiant. Before taking custody of the items, your affiant placed on a pair of fresh unused latex gloves. Inside the aforementioned pillowcase TELUSME provided the UC were 3 magazines containing the following live rounds: Magazine 1 contained thirty (30) live rounds of 7.62x39 caliber Tulammo ammunition; Magazine 2 contained nine (9) live rounds of 7.62x39 caliber Tulammo ammunition and two (2) rounds of 7.62x39 caliber Barnaul ammunition; and, the third magazine contained no live rounds. The firearm that was wrapped up in the black jacket was determined to be a Zastava, Model N-PAP M70, caliber 7.62x39 mm, AK-

4

47 variant semi-automatic rifle, bearing serial number N-PAP053436. Your affiant notes that he is personally familiar with TELUSME from numerous prior contacts with the defendant since approximately 2008, and was able to readily identify TELUSME as the subject depicted in the surveillance video recording who sold the AK-47 variant rifle, magazines, and ammunition to the UC.

10. Certified Palm Beach County Circuit Court (PBCCC) records would establish that at all times material hereto, that is, prior to April 29, 2023, defendant TELUSME possessed at least the following felony convictions, each of which was punishable for a term of imprisonment exceeding one year under Florida law **(18 U.S.C. § 924(e) predicate offenses are rendered in bold font):**

   a. On or about December 17, 2009, defendant TELUSME was adjudicated guilty in PBCCC Case No. 2009CF007918AXXXMB, for the offense of Possession of Cocaine, in violation of Florida Statute 893.13 (6)(a) (Occurrence date June 22, 2009);

   b. **On or about May 12, 2011, defendant TELUSME was adjudicated guilty in PBCCC Case No. 2009CF015943AXXXMB, for the offense of Robbery, in violation of Florida Statute 812.13(1) and (2)(c) (Occurrence date December 14, 2009; Florida Department of Corrections (FL DOC) Release Date May 24, 2015);**

   c. On or about May 12, 2011, defendant TELUSME was adjudicated guilty in PBCCC Case No. 2010CF001562AXXXMB, for the offenses of Fleeing/attempting to elude a marked police car, in violation of Florida Statute 316.1935(1), Battery on a police officer, in violation of Florida Statute 784.07(2)(b), and Resisting an officer

with violence, in violation of Florida Statute 843.01 (Occurrence date February 10, 2010);

d. On or about May 12, 2011, defendant TELUSME was adjudicated guilty in PBCCC Case No. 2010CF005344AXXXMB, for the offenses of Dealing in stolen property, in violation of Florida Statute 812.019(1) and False verification of ownership, in violation of Florida Statute 539.001(8)(B)(8)(A) (Occurrence date April 2, 2010);

e. **On or about March 8, 2011, defendant TELUSME was adjudicated guilty in PBCCC Case No. 2010CF007641AXXXMB, for the offenses of Sale of Cocaine, in violation of Florida Statute 893.13(1)(a)(1), Sale of Oxycodone, in violation of Florida Statute 893.13(1)(a)(1), and Sale of Oxycodone, in violation of Florida Statute 893.13(1)(a)(1) (Occurrence dates October 27, 2009 and November 17, 2009); Florida Department of Corrections (FL DOC) Release Date May 24, 2015);**

f. On or about August 20, 2018. defendant TELUSME was adjudicated guilty in PBCCC Case No. 062016CF006314A88810, for the offense of Possession of Oxycodone, in violation of Florida Statute 893.03(2)(a)(1)(O) (Occurrence date May 22, 2016);

g. **On or about December 6, 2018, defendant TELUSME was adjudicated guilty in PBCCC Case No. 2018CF001401AXXXMB, for the offenses of Sale of Cocaine, in violation of Florida Statute 893.13(1)(a)(1) and Sale of Heroin, in violation of Florida Statute 893.13(1)(a)(1) (Occurrence date January 26, 2018);**

  h. **On or about December 6, 2018, defendant TELUSME was adjudicated guilty in PBCCC Case No. 2018CF001399AXXXMB, for the offenses of Sale of Cocaine, in violation of Florida Statute 893.13(1)(a)(1) and Sale of Heroin, in violation of Florida Statute 893.13(1)(a)(1) (Occurrence date January 24, 2018);**

  i. **On or about December 6, 2018, defendant TELUSME was adjudicated guilty in PBCCC Case No. 2018CF001402AXXXMB, for the offenses of Sale of Cocaine, in violation of Florida Statute 893.13(1)(a)(1) and Sale of Heroin, in violation of Florida Statute 893.13(1)(a)(1) (Occurrence date February 5, 2018);**

  j. **On or about December 6, 2018, defendant TELUSME was adjudicated guilty in PBCCC Case No. 2018CF001908AXXXMB, for the offenses of Possession of Cocaine with intent to sell, in violation of Florida Statute 893.13(1)(a) and Possession of Heroin with intent to sell, in violation of Florida Statute 893.13(1)(a)(1) (Occurrence date February 14, 2018).**

11. On the basis of the foregoing facts, as well as other information, a State residential search warrant was reviewed, approved, and signed by the Honorable Judge Donald Hafele on June 15, 2023, for the address of 4387 Woodstock Drive, Unit C, West Palm Beach, Palm Beach County, Florida. The residential warrant was executed on June 21, 2023, with the assistance of PBSO SWAT, which yielded the following items of evidentiary significance, among others:

  a. Plastic bag with crack cocaine on the bathroom floor, which based on subsequent laboratory analysis was determined to be cocaine with a net weight of 2.5228 grams.

7

b. Multi-colored Shirt hanging in the closet with a brown leather satchel attached that contained a firearm. Your affiant notes that based on the surveillance video this shirt is in fact the same shirt TELUSME was wearing when he sold the rifle to the UC on April 29, 2023;

c. One (1) SCCY, Model DVC-1, 9mm semi-automatic pistol, bearing Serial No. D003204 (Firearm) which also had a magazine containing ten (10) rounds of live Hornady 9 mm ammunition, and one (1) round of live Black Rambo 9mm ammunition;

d. Black and white Nike sneakers. Your affiant notes these sneakers appear to be identical in appearance with those worn by TELUSME during his April 29, 2023, sale of the AK-47 variant rifle to the UC;

e. Red bag containing one (1) Canik, Model TP9 Elite, 9mm semi-automatic pistol, bearing Serial No. T6472-20BH24322, which also had a magazine containing one (1) round of live FC (Federal) 9 mm ammunition;

f. $1,990.00 dollars in United States Currency; and

g. One clear plastic bag containing 2 clear capsules containing a white colored powder, which based on subsequent laboratory analysis was determined to be fentanyl with a net weight of 0.1124 grams.

h. One (1) Black cellular phone

12. After locating the items in the residence listed above, your affiant obtained a lawful State DNA warrant to recover TELUSME's DNA for comparison to the firearms located during the search warrant. The warrant was reviewed, approved and signed on July 3, 2023.

13. On June 23, 2023, you affiant also obtained a lawful state search warrant for TELUSME's Black cellular phone, which as explained above, was recovered from TELUSME's residence, on June 21, 2023. Upon reviewing the extraction report your affiant noted the phone number assigned to the device was 561-800-8512, which was the same number TELUSME used to communicate with the UC during the sale of the AK variant firearm on April 29, 2023.

14. On July 12, 2023, your affiant met with TELUSME at 5098 Cheryl Lane, West Palm Beach, Florida, to retrieve TELUSME's DNA. TELUSME's attorney was contacted by your affiant and advised there was in fact a warrant for TELUSME's DNA. TELUSME's attorney had TELUSME meet your affiant at this location to provide his DNA per the State warrant.

15. On September 25, 2023, your affiant received the DNA results back for the comparison of the DNA taken from the two firearms located during the search warrant and TELUSME's DNA. The following is a synopsis of the results from this comparison:

   a. **23-11222.01 Swabs from trigger/guard of SCCY DVG-1 9mm pistol**

   The DNA profile obtained from this item indicates a mixture of at least four individuals with at least two male contributors. Steve TELUSME could not be ruled out as a possible contributor to this mixed DNA profile. The DNA profile obtained from this item is approximately 25 times more probable if the sample originated from Steve TELUSME and three unknown persons than if it originated from four unknown persons. This analysis provides limited support for the proposition that Steve TELUSME is a contributor to the DNA profile obtained from the sample.

   b. **23-11222.02 Swabs from frame/slide of SCCY DVG-1 9mm pistol**

   The DNA profile obtained from this item indicates a mixture of at least four individuals with at least two male contributors. Steve TELUSME could not be ruled out as

a possible contributor to this mixed DNA profile. The DNA profile obtained from this item is approximately 2.0 quadrillion times more probable if the sample originated from Steve TELUSME and three unknown persons than if it originated from four unknown persons. This analysis provides very strong support for the proposition that Steve TELUSME is a contributor to the DNA profile obtained from the sample.

    c.    **23-11223.01 Swabs from trigger/guard of Canik TP9 SF Elite 9mm pistol**

The DNA profile obtained from this item indicates a mixture of at least four individuals with at least two male contributors. This DNA profile was interpreted as five contributors. Steve TELUSME could not be ruled out as a possible contributor to this mixed DNA profile. The DNA profile obtained from this item is approximately 4.6 million times more probable if the sample originated from Steve TELUSME and four unknown persons than if it originated from five unknown persons. This analysis provides very strong support for the proposition that Steve TELUSME is a contributor to the DNA profile obtained from the sample.

    d.    **23-11223.03 Swabs from sights of Canik TP9 SF Elite 9mm pistol**

The DNA profile obtained from this item indicates a mixture of at least three individuals with at least one male contributor. Steve TELUSME could not be ruled out as a possible contributor to this mixed DNA profile. The DNA profile obtained from this item is approximately 9.3 million times more probable if the sample originated from Steve TELUSME and two unknown persons than if it originated from three unknown persons. This analysis provides very strong support for the proposition that Steve TELUSME is a contributor to the DNA profile obtained from the sample.

16. Special Agent (SA) Herbert Kyle Belga of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) viewed the firearms and ammunition and advised the following, having been certified as an Interstate Commerce Expert by ATF: The Canik firearm is made outside the State of Florida, The Zastava firearm is made outside the State of Florida. The Hornady (9 mm), FC Luger (9 mm), Barnaul (7.62x39 caliber), and Tulammo (7.62x39 caliber) ammunition were all manufactured outside the State of Florida. It should additionally be noted your affiant caused a trace to be run by the ATF National Firearms Tracing Center on the SCCY firearm, which determined that although the firearm was manufactured in the State of Florida, it did travel outside of the State of Florida after its manufacture as a complete firearm. Based on SA Belga's aforementioned review and determination, as well as the trace results for the SCCY firearm, your affiant submits that all of the foregoing firearms and ammunition were either manufactured outside the State of Florida, or traveled outside the State of Florida after their manufacture, and that therefore the foregoing firearms and ammunition, of necessity, traveled in and affected interstate and/or foreign commerce.

17. Upon reviewing the cellular extraction for TELUSME's cellular phone, your affiant observed there were numerous conversations related to narcotic sales in the text messages. The following are some of the communications related to narcotic sales. The following communications are not all of the communications, but merely enough to establish probable cause:

    a. On March 23, 2023 the number 561-800-8512 (TELUSME'S number) receives a text message from the number of 561-284-5914:

    **561-284-5914**- "Yo I got loot call me back come out quick"

**561-284-5914**- "Bring 2 hard too" (Your affiant knows based on my training, experience, and knowledge, "Hard" is common street terminology utilized to describe crack cocaine).

b. On April 30, 2023 the number 561-800-8512 (TELUSME'S number) receives a text message from the number of 561-284-5914:

**561-284-5914**- "Bring a couple hard things too if u can" (Again your affiant knows based on my training, experience, and knowledge, "Hard" is common street terminology utilized to describe crack cocaine).

**561-800-8512**- "Ok"

c. On May 25, 2023 the number 561-800-8512 (TELUSME'S number) sends a text message to the number of 561-284-5914:

**561-800-8512**- "Got new"

**561-284-5914**- "New what"

**561-800-8512**- "Hats" (Your affiant knows based on my training, experience, and knowledge, "Hats" is common street terminology utilized to describe capsules of heroin/fentanyl).

d. On June 13, 2023 the number 561-800-8512 (TELUSME'S number) receives a text message from the number of 561-418-9746:

**561-418-9746**- "Hey whenever you come up with the money. Then holler at me I need thirty dollars cash and thirty in hard" (As stated previously, "Hard" is common street terminology utilized to describe crack cocaine).

e. On May 15, 2023 the number 561-800-8512 (TELUSME'S number) sends a text message to the number of 561-317-4925:

    **561-800-8512**- "Yo this flat I'm need a zip" (Your affiant knows based on my training, experience, and knowledge, "Zip" is common street terminology utilized to identify an ounce of an illegal narcotic. Your affiant further knows based on my training, experience, and knowledge if someone is asking for a zip that type of communication would typically occur when the individual is communicating with their source of supply. An ounce is not a typical amount a person considered a user would be ordering, but would be more indicative of a seller trying to purchase from their source of supply commonly known as reupping).

18. Your affiant has not been able to review all of the text messages in the cellular device as there are over fourteen (14) thousand text message communications in the cellular device. The above are only some of the communications in the phone related to narcotic sales/purchases. Based on these communications as well as the fact that a distribution amount of crack cocaine and a small amount of fentanyl were recovered at TELUSME's residence during the State search warrant, it is clear to your affiant TELUSME is in fact selling illegal narcotics.

19. On the basis of your affiant's training and experience, your affiant is also aware that firearms are a common tool of the drug dealer's trade, and are commonly possessed by drug dealers in furtherance of their drug dealing business, so as to provide protection for themselves, their illegal drugs for sale, and the proceeds of their illegal drug sales.

## CONCLUSION

WHEREFORE, on the basis of the facts and circumstances set forth above, your affiant respectfully submits probable cause exists to charge **Steve TELUSME,** with the following violation of federal law: (a) two (2) counts of Felon in Possession of a Firearm and Ammunition, in violation of Title 18, United States Code, Sections 924(g)(1) and 924(e)(Armed Career

Criminal); (b) Possession With Intent to Distribute Controlled Substances (Cocaine and Fentanyl), in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C); and Possession of one or more Firearms in Furtherance of a Drug Trafficking Offense, in violation of Title 18, United States Code, Section 924(c)(1)(A),

FURTHER YOUR AFFIANT SAITH NAUGHT

_____
Kevin W. Drummond,
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms & Explosives

ATTESTED TO ME TELEPHONICALLY
(VIA FACETIME) BY THE APPLICANT
IN ACCORDANCE WITH THE REQUIREMENTS
OF FED. R. CRIM. P. 4.1 THIS 24
DAY OF MAY, 2024.

_____
HON. RYON M. McCABE
UNITED STATES MAGISTRATE JUDGE

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: Steve TELUSME

**Case No**: 24-mj-8234-RMM

**Counts # 1-2**

**Possession of Firearms and Ammunition by a Convicted Felon**
**Title 18, United States Code, Sections 922(g)(1), 924(e)**

* **Max. Term of Imprisonment:** Life
* **Mandatory Min. Term of Imprisonment (if applicable):** Fifteen (15) years'
* **Max. Supervised Release:** Five (5) years
* **Max. Fine:** $250,000.00
* **Special Assessment**: $100.00

**Count # 3**

**Possession with Intent to Distribute Controlled Substances (Cocaine and Fentanyl)**
**Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C)**
* **Max. Term of Imprisonment:** Twenty (20) years'
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Life
* **Max. Fine:** $1,000,000.00
* **Special Assessment**: $100.00

**Count # 4**

**Possession of a Firearm in Furtherance of a Federal Drug Trafficking Crime**
**Title 18, United States Code, Section 924(c)(1)(A)**
* **Max. Term of Imprisonment:** Life
* **Mandatory Min. Term of Imprisonment (if applicable):** 5 years' imprisonment consecutive to any other term of imprisonment imposed.
* **Max. Supervised Release:** Five (5) years
* **Max. Fine:** $250,000.00
* **Special Assessment**: $100.00\

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.